IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

GREG KACHADOORIAN,

                Plaintiff,

v.

UNITED AIRLINES, INC.

                Defendant.

_____

COMPLAINT AND JURY DEMAND
_____

PLAINTIFF GREG KACHADOORIAN, by his attorney, John R. Olsen, states for

his Complaint and Jury Demand as follows:

NATURE OF CLAIMS

1.  Plaintiff brings claims of negligent and intentional misrepresentation and

breaches of implied contract and/or quasi-contract stemming from false promises that

management employees (including plaintiff) could complain about discrimination

without fear of retaliation therefor, and also appeal adverse actions against them

internally at the defendant corporation (and their appeals would be processed to a fair

1

conclusion). Plaintiff also brings a claim that the defendant corporation should be estopped from breaching the above-described promises.

## JURISDICTION

2.  This court is empowered to hear and decide these claims by 28 U.S.C. § 1332 [diversity jurisdiction].  Plaintiff is a resident of Colorado.  The defendant corporation is a resident of Delaware or Illinois, or both.  Damages of more than $75,000, exclusive of interest and costs, are sought, as well as the equitable remedy of reemployment with the defendant corporation.

3.  Venue is fair and appropriate in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in Colorado.

## PARTIES

4.  Plaintiff is a male and resident of the State of Colorado.

5.  Defendant United Airlines, Inc. ["the defendant corporation"] is a corporation qualified to do and doing business in the State of Colorado, with offices at 8900 Pena Blvd., Denver, Colorado 80249.  The defendant is engaged in airline carrier services.

## ALLEGATIONS

6.  The above paragraphs are incorporated into the following allegations and claims for relief.

7.  Plaintiff was employed with the defendant corporation for more than 20 years, having first been hired on May 8, 1995.

8.  His job title was Ramp Supervisor, and he was a member of management for the defendant corporation.

9.  On or about February 1, 2018, plaintiff was involuntarily terminated from his job.

10.  The defendant corporation alleged that he was a poor performer.

11.  The defendant corporation listed alleged actions and non-actions that it claimed formed the basis of plaintiff's termination.  Plaintiff possessed facts and evidence to refute each and every one, if only he could get the defendant corporation to listen.

12.  The reasons given for plaintiff's termination were false, exaggerated and pretextual.

13.  Plaintiff's termination was actually motivated by his age (57) as an act of illegal age discrimination pursuant to federal and state law.

14.  The defendant corporation has demonstrated a pattern of ridding itself of older and long-term employees for bogus reasons.

15.  Plaintiff was terminated in a letter from management of the defendant corporation, which letter was dated February 1, 2018.

16.   A representative of the human resources department of the defendant

corporation, Pam Hettlinger, witnessed the issuance of the firing letter.

17.   Said letter of termination stated, "You have the right to appeal this decision.

The policy for appeals in the Working Together Guidelines states you have 14

business days to appeal to the division director, managing director, or division vice

president with a copy to the human resources partner."

18.   Plaintiff believed the facts and truth, when presented in such an appeal,

would clear his name and result in a reversal of his firing.

19.   Indeed, the facts and truth presented in such an appeal would have cleared

plaintiff's name and resulted in a reversal of his firing.

20.   Had plaintiff been granted an internal corporate appeal of his termination,

and had said appeal been properly taken to completion by the defendant corporation,

he would have prevailed in it, based upon the facts and truth of what had been done to

him.

21.   In the meantime, plaintiff's attorney sent an email letter to an attorney for

United Airlines -- Cathy Greer -- registering a complaint of age discrimination in the

firing of plaintiff.  Said email letter was sent on February 2, 2018 (2:25 p.m.).  Said

email letter was sent on behalf of plaintiff.

4

22.  Said letter stated, "This termination seems to fit the pattern of United Airlines getting rid of older employees on flimsy excuses in order to replace them with younger employees at lower levels of compensation.  We have been observing this trend for a long time, as you may know. . . . Thus, we see a violation of the Age Discrimination in Employment Act."

23.  Upon information and belief, Greer forwarded the above-described letter to an internal attorney for United Airlines in Chicago, Ben Coleman.

24.  Coleman wrote to plaintiff's attorney on February 14, 2018 (6:54 a.m.).  He stated, among other things, that, "the company will handle Mr. Kachadoorian's appeal in accordance with Company policy in the normal course of business."

25.  Indeed, plaintiff had already proceeded with the promised appeal afforded by the defendant corporation.  By email letter dated February 13, 2018 (at 12:15 p.m.), and pursuant to the Working Together Guidelines of the defendant corporation, plaintiff appealed his termination, triggering in a timely fashion the steps required by the defendant corporation for the internal appeal.

26.  His email letter of appeal was sent to Hettlinger, as well as Manager Brandon Nogues.  The email letter of appeal stated, "Dear Mr. Nogues and Ms. Hettlinger, By this letter and pursuant to the United Airlines "Working together

5

Guidelines" regarding "Management Appeals," I wish to appeal my termination from employment on February 2, 2018."

27.   The "Management Appeals" section of the defendant corporation's "Working Together Guidelines" provides that a face-to-face meeting on the appeal was required to be set up.  Said meeting was indeed scheduled and did occur, on April 6, 2018.

28.   At said appeal session, Station Manager Steve Jaquith heard the details of plaintiff's appeal, and upon said presentation, plaintiff should have prevailed in the appeal.

29.   Had plaintiff been granted an internal corporate appeal of his termination (to completion), he would have prevailed in it, based upon the truth of what had been done to him and related facts.  Such an appeal would have determined that plaintiff deserved no discipline at all, or a lesser discipline that did not involve termination from employment.

30.   But the appeal was never completed.

31.   Pursuant to the "Management Appeals" section of the defendant corporation's "Working Together Guidelines," Jaquith was required to rule on plaintiff's appeal "within ten business days."

32.   No such ruling has ever been issued.

33.  Plaintiff justifiably relied upon the promises set forth in this Complaint by complaining (by and through his attorney) about discrimination, and also taking an appeal and waiting for the results, which never came.

34.  In the meantime, plaintiff has been left in limbo without pay, with damaged personal finances and family in economic danger.

35.  Plaintiff has claims of age discrimination and illegal retaliation and will be filing charges thereof with the United States Equal Employment Opportunity Commission (EEOC).  Such claims cannot be brought in court until a "Right to Sue" letter is received from the EEOC.

36.  In addition to the promise of internal appeal rights, as set forth above, the defendant corporation also communicated to its employees, including plaintiff, that they could complain to the defendant corporation when they perceived discrimination and without fear of retaliation therefor.  Indeed, managers were required by corporate policy to report it.

37.  The failure to complete plaintiff's appeal, as promised by the defendant corporation, was an act of illegal retaliation against plaintiff for reporting discrimination to Greer, Coleman and United Airlines, as described above.  It was also a breach of promises made to plaintiff, to be discussed below.

38.   Soon after plaintiff was hired at the defendant corporation, which was on May 8, 1995, the plaintiff underwent initial on-the-job training, in which the defendant corporation, through one or more managers, made promises that employees would not be disciplined or suffer retaliation for registering complaints upward in management, including regarding discrimination.

39.   On or about November 30, 2011, the defendant merged with Continental Airlines, and merged their web sites and personnel systems together.

40.   At that time and from the date that plaintiff was first hired, the United Airlines employee handbook promised that employees would not be disciplined or suffer retaliation for registering complaints upward in management, including regarding discrimination.

41.   At or about the time of the merger described above, the merged airline published to employees its "Working Together Guidelines."  In said document, the defendant corporation again promised that employees would not be disciplined or suffer retaliation for registering complaints upward in management, including regarding discrimination.

42.   In addition, the same promises are repeated at periodic meetings and conferences conducted by the defendant corporation.

43.  In addition, each employee of the defendant corporation, including plaintiff, was required to undergoing recurrent <u>annual</u> ethics training, which included promises that employees could complain to the defendant corporation's management about discrimination without retaliation therefor

44.  The defendant corporation made the promises set forth in this Complaint to plaintiff, and plaintiff reasonably and detrimentally relied upon them by complaining about discrimination and by filing an internal appeal of his termination.

45.  More specifically, the above-described promises were communicated with the intention that they were binding upon the defendant corporation, its management, employees and plaintiff.

46.  The defendant corporation made the above-described promises and in so doing made an offer to the employees, including plaintiff, manifesting the defendant corporation's willingness to enter into a bargain and justifying the employees and plaintiff in understanding that their assent to the bargain was invited by the defendant corporation and that it would conclude the bargain.

47.  Employment and/or continued employment by the employees, including plaintiff, constituted acceptance of and consideration for the defendant corporation's adherence to the above-described promises.

9

48.  Moreover, plaintiff's taking of an internal appeal also constituted acceptance of and consideration for the defendant corporation's adherence to the above-described promises.

49.  In making said promises, the defendant corporation should reasonably have expected the employees, including plaintiff, to consider the promises to be valid and enforceable, so that the defendant corporation would follow them.

50.  Plaintiff reasonably relied on the aforesaid promises to his detriment by not seeking work elsewhere and not resigning from the corporation.  Moreover, he detrimentally relied on the above aforesaid promises by patiently and loyally awaiting the processing of his internal appeal after his termination.  Injustice can be avoided only by enforcement of the above-described promises.

51.  By the aforesaid promises that were not fulfilled or were reneged upon, the defendant corporation has breached implied and/or quasi-contracts with the plaintiff.

52.  The defendant corporation should be estopped from denying the obligations embodied in said promises.

53. Plaintiff never read nor heard any corporate disclaimers relating to the promises set forth in this Complaint.

10

54.  To the extent that the defendant corporation will claim in this litigation that it disclaimed any such promises, the employer's inconsistent representations will negate the effect of any such disclaimer (if indeed the defendant corporation asserts the existence of any disclaimer in this litigation).

55.  Other employer statements that contradict any such disclaimer, as in the instant case, will override any such disclaimer (if indeed the defendant corporation asserts any disclaimers).

56.  When the terms of the employment relationship are inconsistent and/or ambiguous regarding the possible impact of a disclaimer, such becomes an issue of fact for jury determination, and a presumption exists that ambiguous promises will be resolved against the party choosing the words of the promises (in this case the defendant corporation).

57.  In sum, should the defendant corporation assert that any such disclaimers nullify the defendant corporation's promises to its employees as described in this Complaint, including as made to plaintiff, the issue presents a jury question.

58.  The defendant corporation's reasons for the above-described actions against plaintiff were false, exaggerated and pretextual.

59.  A showing of falsity, pretext or suspicion of mendacity, as in the instant case, creates a case for jury determination of plaintiff's claims.

60.  In their treatment and mistreatment of plaintiff as described in this Complaint, all supervisors and managers of the defendant corporation acted as employees and agents of the defendant corporation.  Therefore all such actions against plaintiff and communications relating to them were those of the defendant corporation.

61.  The defendant corporation breached the promises as described above by taking the actions against plaintiff described in this Complaint.

62.  The defendant corporation is also culpable for intentional and negligent misrepresentation, and fraudulent concealment for promising no retaliation and also promising an internal appeal and then reneging on said promises, as described above.

63.  Plaintiff did not violate any policy or procedure of the defendant corporation. Indeed, he complied with policies and procedures of the defendant corporation in every respect.

64.  The defendant corporation's reasons for these actions against plaintiff were false, exaggerated and pretextual.

65.  As the Tenth Circuit emphasized in *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323-24 (10th Cir. 1997):  "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for the action that a reasonable factfinder could

rationally find them unworthy of credence . . . ."  Such has been shown in the instant fact pattern.

66.  Retaliation may be inferred from close temporal proximity between protected activity, as in the instant case, and ensuing retaliation against the complaining employee. *See, Tabor v. Hilti,* 703 F.3d 1206, 1219 (10th Cir. 2013) [quoting *Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006)]; *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1252 (10th Cir. 2001).

67.  The above-described actions against plaintiff were willful.  They were also taken with malice and reckless indifference to plaintiff's rights protected by law.

68.  Because of the above-described actions, plaintiff has suffered and will continue to suffer:  loss of his employment, with all attendant benefits and other amenities of his employment, including pay, compensation, benefits and salary, as well as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

69.  The above-stated paragraphs are incorporated into the following Claims for Relief, all of which wrongs against plaintiff caused him damages as sought in the Ad Damnum clause below.  In addition, the averments of the following claims are incorporated into each other.

## FIRST CLAIM FOR RELIEF

### (Breach of Implied and/or Quasi-Contracts)

70.  Because of the breaches of promises by the defendant corporation, as are set forth in this Complaint, the defendant corporation has breached implied contracts and/or quasi-contracts with plaintiff.

## SECOND CLAIM FOR RELIEF

### (Estoppel)

71.  The defendant corporation should be estopped from denying the obligations embodied in those promises described in this Complaint.

## THIRD CLAIM FOR RELIEF

### (Misrepresentation)

72.  By its actions as set forth in this Complaint, the defendant corporation is culpable for misrepresentation in that:  it made a false representation of past or present fact to plaintiff, as set forth above; said fact or facts were material; the defendant corporation made the representations knowing they were false or with awareness that the defendant corporation did not know whether they were true or false;  plaintiff justifiably relied on the representations of alleged fact from the defendant corporation;

and plaintiff was damaged by these alleged facts and his reliance -- all as set forth

above and below.

73.  By its actions set forth in this Complaint, the defendant corporation falsely,

negligently and intentionally misrepresented that plaintiff had a right to complain about

discrimination without retaliation from the defendant corporation and also to file and

process an internal appeal of his termination, upon which promises plaintiff

detrimentally relied as set forth in this Complaint, causing him foreseeable damages.

74.  By its actions set forth in this Complaint, the defendant corporation falsely,

negligently and intentionally misrepresented that plaintiff could complain about

discrimination to management without fear of retaliation, and he would not be retaliated

therefor.  Nonetheless, he was retaliated against therefor as described in this Complaint.

75.  The defendant corporation knew or should have known that its promises as

described herein were false, and that such negligent, reckless and intentional

dissemination thereof to the employees and plaintiff was fraudulent.


FOURTH CLAIM FOR RELIEF

(Fraudulent Concealment)

76.  By its actions as set forth in this Complaint, the defendant corporation is

culpable for fraudulent concealment of material facts, as set forth above, and said

concealed facts, well within the knowledge of the defendant corporation, included that any complaint of discrimination within the Denver hub would result in retaliation against the complainant by the defendant corporation.

77.  By its actions as set forth in this Complaint, the defendant corporation is culpable for fraudulent concealment of material facts, as promised by the defendant corporation, and said concealed facts, well within the knowledge of the defendant corporation, included that if an employee filed an internal appeal, as set forth by the defendant corporation, the appeal would be ignored and never processed to completion.

78.  With regard to the above-described concealed facts, the defendant corporation knew that the plaintiff might rely upon the nondisclosure of said facts by complaining about discrimination and filing an internal appeal (which he did).

79.  The defendant corporation had a legal and/or equitable duty to communicate said facts to plaintiff but, instead, concealed them from him.

80.  Said legal and/or equitable duty was because plaintiff and defendant were in a confidential or fiduciary duty relationship; and/or disclosure was necessary to clarify misleading information already disclosed; and/or the defendant corporation had special knowledge of said material facts to which plaintiff did not have access.

## FIFTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

81.  By its actions as set forth in this Complaint, the defendant corporation is culpable for negligent representation in that it negligently gave false and material information to the plaintiff, who reasonably relied upon said information, as set forth above, causing him damages as claimed herein.

## PRAYER AND JURY DEMAND

WHEREFORE, plaintiff respectfully moves this court and prays for:

(a)  a declaratory judgment declaring that the defendant corporation has committed the above-described wrongs and violation of the common law by the aforesaid acts against plaintiff;

(b)  re-employment within the defendant corporation, with all attendant benefits and other amenities that he would have received were these illegal actions not taken against him;

(c)  all compensation, back pay, equal pay, front pay and benefits that plaintiff was denied because of the defendant's actions and non-actions, in a sum to be determined by the court and jury;

17

(d)  liquidated and compensatory damages, including for past, present and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in a sum to be determined by the court and jury;

(e)  legal fees, disbursements, expert fees, and costs of this action;

(f)  all legal interest on sums awarded;

(g)  all issues so triable to be decided by a jury;

(h)  such other relief as the court may deem appropriate.

RESPECTFULLY SUBMITTED,

s/ John R. Olsen
John R. Olsen
357 S. McCaslin Blvd.
Suite 200
Louisville, Colorado 80027
(303) 828-5220
Attorney for Plaintiff
May 16, 2018                                       Greg Kachadoorian

Plaintiff's Address:
14201 E. Marina Drive
Aurora, CO 80014